IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

WESTERN DIVISION

ANDREW GILES                                                    PLAINTIFF

VS.                           CIVIL ACTION NO. 5:22-CV-19-DCB-LGI

STATE FARM FIRE AND CASUALTY COMPANY
AND JOHN DOES 1-5                                              DEFENDANTS

ORDER

BEFORE THE COURT are Plaintiff Andrew Giles's ("Plaintiff") Motion for Partial Summary Judgment ("Plaintiff's Motion") [ECF No. 59] and Defendant State Farm Fire and Casualty Company's ("Defendant") Motion for Partial Summary Judgment ("Defendant's Motion") [ECF No. 62]. Having carefully considered the Motions, the parties' submissions, and being fully advised in the premises, the Court finds as follows:

I.   Background

Defendant issued Plaintiff an insurance policy with an effective date of March 17, 2021, that covered Plaintiff's mobile home in which he lived with his wife and young child on family land in Bogue Chitto, Mississippi.[1] [ECF No. 60] at 2. On the evening of March 17, 2021, a storm ripped off a portion of the metal roof that Plaintiff had installed on top of a

---

[1] Although immaterial, the parties dispute whether Plaintiff requested the relevant policy on March 16 or 17, but they agree the policy was ultimately made effective on March 17, 2021. [ECF No. 60] at 2; [ECF No. 63] at 1-2.

1

preexisting shingle roof on the mobile home earlier that year. Id. at 2-4. The next morning, Plaintiff reported the claim to Defendant and placed tarps over the mobile home.[2] Id. at 5. A claims adjuster attempted to contact Plaintiff on March 19, 2021, but could not reach him.[3] [ECF No. 63] at 3. Plaintiff reached out to State Farm that next week and Defendant scheduled an inspection for April 5, 2021. Id. Defendant ultimately issued Plaintiff a retroactive insurance policy in between the date of claim and this inspection. Id.

Adjuster Christopher Hyde ("Hyde") inspected Plaintiff's mobile home and noted damage to the front slope of the metal roof (the portion of the roof that the storm removed) and three rooms with ceiling and wall water damage, which Hyde included in his estimate. [ECF No. 62-2] at 8. Hyde's estimate, which totaled $10,291.26, provided funds to remove and replace the ceiling and insulation in each of the three rooms, to remove and replace the walls and insulation in the small bathroom, to replace the walls of the child's bedroom and the master bathroom, and to replace the front half of the roof that had blown away. [ECF No. 63] at 3-4. After applying the policy's

---

[2] Plaintiff noted that heavy rain and wind resulted in damages including roofing and water leaks within the ceiling that showed in the bathroom, master bath and bedroom, and the adjoined living room and kitchen. [ECF No. 62-2] at 10.
[3] Defendant's records note that Plaintiff missed numerous calls from Defendant regarding scheduling an adjuster inspection appointment. [ECF No. 62-2] at 9.

2

$1,000.00 deductible, Hyde issued Plaintiff a check for $9,291.26. Id. at 4. Defendant's designated expert engineer, Mark Watson ("Watson"), confirmed that these repairs would have restored the mobile home to its pre-accident condition. Id. at 7.

Plaintiff did not use these funds to repair his mobile home. Id. at 4. Nor did Plaintiff spend additional funds appropriated by Defendant to pay roofers to install more secure tarps on the roof of the mobile home to better protect the interior from damage before construction could occur. Id. Instead, Plaintiff relied on the tarp that he had initially installed, which frequently came loose for days on end and further exposed the interior of the mobile home to additional damage. Id. at 4-5. Still, Plaintiff complained that moisture made the mobile home unlivable and requested additional living expenses ("ALE") after he relocated his family to his parent's house.[4] [ECF No. 62-2] at 6. Meanwhile, Plaintiff sought estimates from local contractors to make improvements and repairs beyond that which the storm damaged. [ECF No. 63] at 5-7.

---

[4] Plaintiff's policy only covered ALE if the mobile home became uninhabitable, which Defendant determined was not initially the case. [ECF No. 63] at 8. However, Defendant informed Plaintiff it would pay ALE once construction began so that Plaintiff's family could reside elsewhere during the repairs. Id.

3

Upon Plaintiff voicing his concerns about moisture in the mobile home, Defendant offered the services of ServPro, which Plaintiff declined. [ECF No. 60] at 7; [ECF No. 63] at 6. Citing the mobile home's continued disrepair, Defendant issued Plaintiff a letter on May 13, 2021, that confirmed that the policy would not cover damage attributable to Plaintiff's failure to protect the property from further damage. [ECF No. 63] at 7. At Plaintiff's request, Defendant conducted an additional inspection of the mobile home on May 26, 2021, which confirmed that the scope of repairs included in the original estimate was correct and noted that damage to the mobile home had progressed because of inaction in repairing the premises. Id.

Plaintiff never ultimately repaired his mobile home. Id. at 8. Instead, he stopped running its air conditioning in July 2021 and sold the mobile home altogether in 2022. Id. at 7. Plaintiff claims he spent the insurance proceeds on rent while he lived at his parents' house. Id. at 9. Only after filing suit did Plaintiff demand damages for property stored in the trailer, which he alleges he could not store elsewhere sue to space or cost.[5] Id. at 8-9.

---

[5] Hyde testified that during his inspection of the mobile home Plaintiff neither mentioned any damage to personal property nor did Hyde observe any damage to personal property. [ECF No. 62-3] at 10.

On February 10, 2022, Plaintiff filed suit against Defendant in the Circuit Court of Lincoln County on claims for policy benefits, bad faith, negligence, breach of contract, breach of good faith and fair dealing, and infliction of emotional distress. [ECF No. 1-1] at 1-9. On March 23, 2022, Defendant removed this case to this Court pursuant to 28 U.S.C. §§ 1332 and 1441. [ECF No. 1] at 1-2.

On May 12, 2023, Plaintiff submitted his Motion, in which he requests partial summary judgment as to Defendant's fifteenth and seventeenth defenses, which regard Plaintiff's failure to mitigate damages and the reservation of the right to assert additional defenses. [ECF No. 59] at 1-2. That same day, Defendant submitted its Motion, in which it requests partial summary judgment as to Plaintiff's bad faith claim and the corresponding punitive damages, attorney's fees, and other extracontractual damages. [ECF No. 62] at 1.

II.  Legal Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

   III. Analysis

      a. Plaintiff's Motion

In his Motion, Plaintiff requests that the Court grant summary judgment in his favor as to Defendant's fifteenth and seventeenth affirmative defenses. [ECF No. 59]. Defendant's fifteenth defense regards Plaintiff's failure to mitigate his own damages while the seventeenth defense reserves Defendant's right to assert additional defenses. Id. at 1-2.

Under Mississippi law, an injured party must mitigate his damages and "cannot collect damages occasioned by his own failure to make reasonable exertion to arrest such disaster." Hudson v. Farrish Gravel Co., 279 So. 2d 630, 635 (Miss. 1973) (quoting 15 Am.Jur. Damages § 40, at 439 (1938)). Plaintiff first argues that he satisfied his duty to mitigate by placing a tarp over the front of his mobile home where the storm ripped off the metal roof. [ECF No. 60] at 10-12. He further avers that the Defendant's own delays, not any failure to mitigate on his part, caused the interior damage that followed the storm. Id.

Defendant rebuts Plaintiff's arguments with an engineer expert affidavit from Watson, excerpts from its claim file in this matter, and Plaintiff's own deposition. [ECF No. 68]. Watson confirmed that Defendant's April 5, 2021, damage assessment was reasonable, and that Plaintiff could have avoided further damage to his mobile home by either repairing the mobile home soon after the inspection or by installing better temporary protection over the roof and removing affected sheetrock and insulation. [ECF No. 68-3] at 13-14. Plaintiff's claim file includes a paraphrased admission from Plaintiff that the tarp he placed over the affected portion of the roof had blown off and on and that he had reaffixed the tarp only two days before the second inspection on May 26, 2021, after it had "been off for [awhile]." [ECF No. 68-2] at 1.

Defendant also expresses doubts regarding the sincerity of Plaintiff's mitigation efforts in considering: (1) Plaintiff's inability to retain a professional roofer to make temporary roofing repairs (for which Defendant paid Plaintiff); (2) Plaintiff's refusal of Defendant's offer of ServPro's moisture reduction services; and (3) Plaintiff's reluctance to make repairs within his capabilities because of the risk of not being compensated for these repairs in addition to what Defendant had already paid. [ECF No. 68-1] at 4, 6; [ECF No. 68-2] at 2.

7

Defendant has submitted sufficient evidence to create a genuine issue of material fact such that summary judgment as to the Defendant's fifteenth defense is inappropriate. The Court will leave this issue for the jury to decide.

Plaintiff also argues that Defendant has waived all defenses not yet alleged because the discovery deadline has passed. [ECF No. 60] at 12. F.R.C.P. 15(b) provides that the Court "should freely permit" amended pleadings during trial or after trial "when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits." Therefore, the Court will deny summary judgment as to the Defendant's seventeenth defense in recognition that amended pleadings may become necessary. Nevertheless, the Court will carefully discern whether any future amendment could prejudice a party and whether a continuance is necessary "to enable the objecting party to meet the evidence." F.R.C.P. 15(b).

In sum, the Court will deny Plaintiff's Motion [ECF No. 59] in its entirety.

    b. Defendant's Motion

In its Motion, Defendant asks the Court to grant summary judgment in its favor as to Plaintiff's bad faith claim and the corresponding extracontractual damages. [ECF No. 62].

Defendant argues that summary judgment is warranted as to Plaintiff's bad faith claim and the corresponding extracontractual damages because: (1) Plaintiff is not entitled to a directed verdict as to the underlying insurance claim; (2) there was an arguable or legitimate basis for its insurance claim determinations; (3) Plaintiff cannot show that Defendant acted with actual malice, gross negligence which evidences a willful, wanton, or reckless disregard for the safety of others, or committed actual fraud; and (4) Defendant cannot provide evidence to warrant extracontractual Veasley damages. [ECF No. 63] at 10-13. The Court will first discuss Plaintiff's bad faith claim for punitive damages and then Plaintiff's request for extracontractual Veasley damages.

Mississippi courts apply the directed verdict test to determine whether an insurer had an arguable reason for its decision, and thus, to determine whether bad faith and extracontractual damages claims are meritorious.[6] Reed v. State Farm Fire and Cas. Co., 2022 WL 4474177 (S.D. Miss September 26, 2022). "Under this test, unless the insured would be entitled to a directed verdict on the underlying insurance claim, an arguable reason to deny the insurance claim exists in most

---

[6] Plaintiff cites caselaw regarding the directed verdict test that is inapplicable here as the cited caselaw is factually and procedurally distinguished from this case. [ECF No. 66] at 11-13.

instances." <u>Dunn v. State Farm Fire & Cas. Co.</u>, 927 F.2d 869 (5th Cir. 1991); <u>see also</u>, <u>Tipton v. Nationwide Mut. Fire Ins. Co.</u>, 381 F.supp.2d 572, 579 (S.D. Miss. 2004). A plaintiff must carry this burden to advance past the summary judgment stage as to a claim for bad faith denial of an insurance claim. <u>U.S. Fid. & Guar. Co. v. Wigginton</u>, 964 F.2d 487, 492 (5th Cir. 1992). A directed verdict is permissible only when "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." F.R.C.P Rule 50.

The weight of the evidence presented by Defendant in this case precludes a directed verdict, and therefore, Plaintiff's bad faith and extracontractual damages claims. As discussed <u>supra</u>, Defendant issued Plaintiff a $9,291.26 check at the conclusion of its inspection on April 5, 2021, to remove and replace the ceiling and insulation in each of the three rooms, to remove and replace the walls and insulation in the small bathroom, to replace the walls of the child's bedroom and the master bathroom, and to replace the front half of the roof that had blown away. [ECF No. 63] at 3-4. No evidence in the record leads the Court to conclude that a reasonable jury could find for the Plaintiff as to bad faith. F.R.C.P Rule 50. Plaintiff

failed to produce evidence that could surpass the heavy burden of the directed verdict test. Wigginton, 964 F.2d at 492.

The Court's analysis remains consistent even independent of the directed verdict test. Under Mississippi law, a plaintiff seeking punitive damages on a bad faith insurance claim must carry the "heavy burden" of demonstrating that (1) the insurance company's position lacked any arguable or legitimate basis and (2) the insurer committed a willful or malicious wrong, or acted with gross and reckless disregard for the insured's rights. Mitchell v. State Farm Fire & Casualty Co., 954 F.3d 700, 707-08 (5th Cir. 2020)(internal citations omitted).

Plaintiff cannot carry this burden. Defendant issued Plaintiff a retroactive insurance policy effective the date of the storm, contacted Plaintiff repeatedly to follow up on his initial claim, and paid out the claim immediately following its initial inspection. [ECF No. 60] at 2-5; [ECF No. 63] at 2-5. Upon review of Defendant's April 5, 2021, inspection summary, the Court recognizes that no reasonable juror could find that Defendant's coverage decisions lack an arguable or legitimate basis or that Defendant acted with malice. [ECF No. 62-2] at 8-10. Watson's expert opinion confirms that Defendant acted reasonably in this instance. [ECF No. 68-3] at 13-14.

Based on the evidence in the record, Plaintiff has likewise failed to prove by clear and convincing evidence that Defendant "acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud," which is required in a claim for punitive damages in Mississippi. Illinois Cent. R. Co. v. Young, 120 So.3d 992, 1014 (2012) cert. den. 121 So.3d 992 (Miss. 2013) (quoting Miss. Code Ann. § 11-1-65(1)(a)).

Defendant also asks that the Court grant summary judgment in its favor as to Plaintiff's claim for extracontractual Veasley damages. [ECF No. 62]. Veasley damages are extracontractual damages where "the conduct was not sufficiently egregious to justify the imposition of punitive damages," but still where "the insurer lacks an arguable basis for delaying or denying a claim." Essinger v. Liberty Mut. Fire Ins. Co., 534 F.3d 450, 451 (5th Cir. 2008). These extracontractual damages can include attorneys' fees and other costs. Id. at 452.

Although these damages may be awarded based on the negligence of an insurance company's employees' handling of an insurance claim, a plaintiff must still satisfy the first prong (i.e., "arguable or legitimate basis") of the test for punitive damages on a bad faith insurance claim. Id. at 451. As previously discussed, Plaintiff has failed to provide evidence

12

that could prove that Defendant lacked an arguable or legitimate basis in handling Plaintiff's claim.

Further, the Court is not aware of any evidence in the record that demonstrates negligence on the part of Defendant's employees' handling of Plaintiff's insurance claim that rises to the level of creating an illegitimate basis for its coverage decisions. Id. Plaintiff vaguely asserts that the Court should withhold judgment on dismissing his claim for Veasley extracontractual damages until evidence can be put forth at trial. [ECF No. 66] at 19. This is inapposite to Plaintiff's role in sufficiently showing a genuine, triable fact issue at the summary judgment stage. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

The evidentiary record depicts a garden variety insurance dispute in which the parties cannot agree to what extent coverage is appropriate. Those issues will move forward to trial. However, Plaintiff failed to submit evidence of bad faith, actual malice, or otherwise egregious conduct to meet the heavy burden necessary to advance its bad faith and extracontractual damages claim past the summary judgment stage. Mitchell, 954 F.3d at 707-08. Therefore, the Court will grant Defendant's Motion. [ECF No. 62].

IV.   Conclusion

For the foregoing reasons, Plaintiff's Motion [ECF No. 59] shall be DENIED and Defendant's Motion [ECF No. 62] shall be GRANTED.

ACCORDINGLY,

IT IS HEREBY ORDERED that Plaintiff's Motion for Partial Summary Judgment [ECF No. 59] is DENIED and Defendant's Motion for Partial Summary Judgment [ECF No. 62] is GRANTED.

SO ORDERED, this the 20th day of June, 2023.

/s/ David Bramlette
DAVID C. BRAMLETTE
UNITED STATES DISTRICT JUDGE