IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

WESTERN DIVISION

ANDREW GILES                                                    PLAINTIFF

VS.                           CIVIL ACTION NO. 5:22-CV-19-DCB-LGI

STATE FARM FIRE AND CASUALTY COMPANY
AND JOHN DOES 1-5                                              DEFENDANTS

ORDER

BEFORE THE COURT is Plaintiff Andrew Giles's ("Plaintiff") Motion for Reconsideration ("Motion") [ECF No. 79]. Having carefully considered the Motion, the parties' submissions, and being fully advised in the premises, the Court finds as follows:

I.   Background

This is a garden variety insurance dispute in which the parties cannot agree to what extent coverage is appropriate. On February 10, 2022, Plaintiff filed suit against Defendant in the Circuit Court of Lincoln County on claims for policy benefits, bad faith, negligence, breach of contract, breach of good faith and fair dealing, and infliction of emotional distress. [ECF No. 1-1] at 1-9. On March 23, 2022, Defendant removed this case to this Court pursuant to 28 U.S.C. §§ 1332 and 1441. [ECF No. 1] at 1-2.

On May 12, 2023, Defendant submitted a summary judgment motion, in which it requested partial summary judgment as to

1

Plaintiff's bad faith claim and the corresponding punitive damages, attorney's fees, and other extracontractual damages. [ECF No. 62] at 1. Plaintiff also filed a partial summary judgment motion that same day. [ECF No. 59]. On June 20, 2023, the Court granted Defendant's summary judgment motion and denied Plaintiff's motion in a combined Order. [ECF No. 76]. On June 30, 2023, Plaintiff filed the instant Motion. [ECF No. 79].

   II.   Legal Standard

   Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

   Under Rule 54(b), "any order ... that adjudicates fewer than all the claims ... may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "'Although Federal Rule of Civil Procedure 54(b) applies to

2

motions for reconsideration of an interlocutory order, courts have utilized the standards of Rule 59 when analyzing such motions[,]' though the timeliness of a motion to reconsider an interlocutory order is governed by reasonableness." Walker v. Hunt, No. 1:19-CV-246-LG-RPM, 2021 WL 6048911, at *2 (S.D. Miss. Dec. 20, 2021)(quoting E. M. v. Lewisville Indep. Sch. Dist., No. 4:15-CV-00564, 2017 WL 1788025, at *1 (E.D. Tex. May 4, 2017)).

Rule 59(e) "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." Waltman v. Int'l Paper Co., 875 F.2d 468, 473 (5th Cir.1989)(internal quotations omitted). Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly. Templet v. HydroChem Inc., 367 F.3d 473, 479 (5th Cir. 2004)(citations omitted). Such a motion is not the "proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before...." Templet v. HydroChem Inc., 367 F.3d 473, 478 (5th Cir. 2004) (quotations omitted).

III. Analysis

Plaintiff requests that the Court reconsider its summary judgment order that dismissed Plaintiff's claims for bad faith, punitive damages, and Veasley damages. [ECF No. 79] at 1.

Plaintiff claims that the Court ignored genuine issues of material fact and failed to weigh facts in favor of Plaintiff. Id. Plaintiff also argues that the Court improperly relied on the directed verdict test in dismissing Plaintiff's claims. Id. at 2. Defendant argues that Plaintiff fails to present any genuine issues of material fact as to the Court's dismissal of Plaintiff's claims and that the Motion merely rehashes "matters already properly ruled on by the court…" [ECF No. 81] at 1.

A. Alleged Factual Issues

To demonstrate fact issues, Plaintiff points to seven statements found in the Order in which the Court addressed Plaintiff's and Defendant's summary judgment motions. [ECF No. 80] at 5-18. Of those seven statements, only one is found in the Court's analysis of Defendant's Motion. [ECF No. 80] at 12 (citing [ECF No. 76] at 11). Nevertheless, the Court will address each of Plaintiff's contentions.

When reviewing these excerpts, the Court will carefully evaluate the materiality of the facts and the genuineness of any fact issues. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A fact is

4

"material" if it "might affect the outcome of the suit under governing law." Id. at 248. An issue is "genuine" if the evidence could allow a reasonable jury to return a verdict for the nonmovant. TIG Ins. Co. v. Sedgwick James, 276 F.3d 754, 759 (5th Cir. 2002). If the moving party makes an initial showing that the pleadings and record are devoid of genuine issues of material fact, "the nonmovant must come forward with 'specific facts' showing a genuine factual issue for trial." Id. (citations omitted).

### 1. Statement One

"A claims adjuster attempted to contact Plaintiff on March 19, 2021, but could not reach him." [ECF No. 80] at 5 (citing [ECF No. 76] at 2).

Plaintiff asserts that there is a fact issue regarding this statement, which notes that he missed a claims adjuster's call. [ECF No. 80] at 5-6. In support, Plaintiff cites previously undisclosed deposition testimony to support his claim that he spoke to someone from State Farm on either March 18 or 19. Id. (citing [ECF No. 79-1] at 11). However, Plaintiff did not include that deposition passage in the summary judgment record. [ECF No. 65-1]. When reviewing evidence in a summary judgment proceeding, "the court need consider only the cited materials." FED. R. CIV. P. 56(c)(3).

When applying fresh scrutiny, that citation does not contradict the Court's excerpted statement or the paragraph as a whole. In that paragraph, the Court acknowledged that Plaintiff reported a claim on March 18 and that a claims adjuster attempted to and could not reach Plaintiff on March 19 to follow up on that claim. [ECF No. 76] at 2. Plaintiff cannot demonstrate that the Court's statement factually conflicts with Plaintiff's newly disclosed deposition testimony.

Even had Plaintiff so demonstrated, this statement lacks the materiality and genuineness necessary to pretermit summary judgment on a bad faith claim for punitive damages. Under Mississippi law, a plaintiff seeking punitive damages on a bad faith insurance claim must carry the "heavy burden" of demonstrating that (1) the insurance company's position lacked any arguable or legitimate basis and (2) the insurer committed a willful or malicious wrong, or acted with gross and reckless disregard for the insured's rights. Mitchell v. State Farm Fire & Casualty Co., 954 F.3d 700, 707-08 (5th Cir. 2020)(internal citations omitted). Even had the Court erred, this alleged issue is irrelevant to the determination of bad faith punitive damages, and it does not warrant reconsideration of the Court's Order in this case. Sedgwick James, 276 F.3d at 759.

2. Statement Two

> Hyde's estimate, which totaled $10,291.26, provided funds to remove and replace the ceiling and insulation in each of the three rooms, to remove and replace the walls and insulation in the small bathroom, to replace the walls of the child's bedroom and the master bathroom, and to replace the front half of the roof that had blown away.

[ECF No. 80] at 6 (citing [ECF No. 76] at 2).

Plaintiff argues that the Court's statement here is contrary to the record because Hyde's estimate only included repairs to a certain percentage of the walls in the child's bedroom and the master bedroom. [ECF No. 80] at 6-7 (citing [ECF No. 62-4] at 6-7). The basis for the Court's statement is that Hyde's estimate allocated funds to repair damage to Plaintiff's home wrought by the storm as determined by State Farm. Plaintiff, who has taken that statement to mean that the Court determined that Defendant had paid Plaintiff's claim in full, now argues that a fact issue exists as to the value of the underlying claim.

Had the Court determined the value of Plaintiff's claim and that Defendant had paid that claim in full, the Court would have dismissed this entire case sua sponte. The Court did not, because the Court did not make that finding. The Court simply laid out the process through which Defendant evaluated and paid Plaintiff's claim. [ECF No. 76] at 2-3. As the Court later noted

7

in its Order, the crux of this case is that the parties cannot agree to what extent coverage is appropriate. Id. at 13.

The disputed nature of the value of Plaintiff's claim does not by itself amount to bad faith. Plaintiff's providing alternative estimates does not demonstrate that Defendant lacked an "arguable or legitimate basis for its insurance claim determinations." Mitchell, 954 F.3d at 707-08. Plaintiff has failed to demonstrate that the Court's statement, which described Defendant's evaluation, amounts to an inappropriate factual determination that warrants reconsideration.

### 3. Statement Three

"…Plaintiff relied on the tarp that he had initially installed, which frequently came loose for days on end and further exposed the interior of the mobile home to additional damage." [ECF No. 80] at 7 (citing [ECF No. 76] at 3).

Plaintiff asserts that there is a fact issue regarding this statement, which notes that the tarp that Plaintiff affixed to the damaged portion of his roof was prone to coming loose. [ECF No. 80] at 7. In support, Plaintiff once more cites deposition testimony that he did not enter into the summary judgment record or cite to in opposition of Defendant's summary judgment motion to demonstrate that the roof was only without a tarp for 24 hours at a time at most. Id. (citing [ECF No. 79-1] at 21).

8

Again, when reviewing evidence in a summary judgment proceeding, "the court need consider only the cited materials." FED. R. CIV. P. 56(c)(3).

Even had Defendant cited to this deposition excerpt while on summary judgment, the Court doubts the genuineness of any fact issue this quote can create. Plaintiff argues this is satisfactory evidence that the roof had not been without a tarp for more than one day, though in that same excerpt Plaintiff admitted that he did not go out to the house to fix the tarp every day. [ECF No. 79] at 21. Plaintiff's 24-hour maximum appears to be his own conclusory speculation. Plaintiff here has not provided "'specific facts' showing a genuine factual issue for trial." Sedgwick James, 276 F.3d at 759 (citation omitted).

Further, whether the roof remained without a tarped covering for multiple, isolated periods of 24 hours or for multiple days at a time is immaterial to an insurance claim for bad faith punitive damages. Anderson, 477 U.S. at 248. Notably, the Court did not include any discussion of the tarp in its analysis of Defendant's summary judgment motion. [ECF No. 76] at 8-13.

### 4. Statement Four

"Plaintiff's policy only covered ALE if the mobile home became uninhabitable, which Defendant determined was not

initially the case. [ECF No. 63] at 8. However, Defendant informed Plaintiff it would pay ALE once construction began so that Plaintiff's family could reside elsewhere during the repairs. Id." [ECF No. 80] at 7 (citing [ECF No. 76] at 3, n. 4).

Plaintiff asserts that there is a fact issue regarding this statement, which notes that Defendant determined that Plaintiff's mobile home was initially habitable. [ECF No. 80] at 7-10. No such fact issue exists, because the Court made no finding regarding the habitability of Plaintiff's mobile home. The Court simply addressed Defendant's own claim determinations. [ECF No. 76] at 3, n.4. The Court recognizes that Plaintiff disagreed with Defendant regarding habitability. [ECF No. 80] at 7-10. Nevertheless, the Court made no factual determination in this instance. Therefore, this statement does not warrant additional reconsideration of the Court's Order.

### 5. Statement Five

"…Plaintiff sought estimates from local contractors to make improvements and repairs beyond that which the storm damaged." [ECF No. 80] at 10 (citing [ECF No. 76] at 3).

Plaintiff asserts that there is a fact issue regarding this statement, which notes that Plaintiff sought estimates that went beyond the storm's damage to Plaintiff's mobile home. [ECF No.

10

80] at 10-11. Plaintiff states that the Court relied not on evidence but the arguments of counsel. Id. As an initial matter, the Court relied on a variety of evidentiary sources as cited in Defendant's memorandum, not on argument alone. See, e.g., [ECF No. 62-10]; [ECF No. 62-1] at 50-51; [ECF No. 62-15]; [ECF No. 62-11]; [ECF No. 62-12]; [ECF No. 62-13]; [ECF No. 62-14]; [ECF No. 62-2] at 3.

Importantly, Plaintiff misapprehends the Court's statement to mean that the Plaintiff's ultimate estimates were financially incorrect, and that Defendant's estimates were correct. [ECF No. 80] at 10-11. Such is not the case. As the Court has repeatedly stated, the Court has made no determination as to the value of the underlying insurance claim in this case. See supra, at 1, 7-8; [ECF No. 76] at 13.

The Court points specifically to the language of its statement for context: "Meanwhile…sought…beyond that which the storm damaged." [ECF No. 76] at 3. The Court simply intended to convey that Plaintiff distracted himself with tangential matters in the process of seeking repairs. Specifically, Plaintiff's deposition indicated that his deliberations about whether to replace the damaged portion of his roof with shingle or metal contributed in part to the delay in repairs that in part allowed moisture to cause damage additional to that which the storm

initially caused. [ECF No. 62-1] at 50-51. Plaintiff never confronted whether these deliberations when seeking estimates contributed to such a delay. [ECF No. 66].

In sum, the Court did not determine whose final estimate should prevail, it merely analyzed the process through which Plaintiff sought repair estimates. Therefore, Plaintiff's contention as to this statement is immaterial to the Court's previous Order.

### 6. Statement Six

"…Defendant offered the services of ServPro, which Plaintiff declined." [ECF No. 80] at 11 (citing [ECF No. 76] at 4).

Plaintiff asserts that there is a fact issue regarding this statement, which notes that Plaintiff did not accept the services of ServPro as offered by Defendant. [ECF No. 80] at 11-12. In support, Plaintiff cites previously undisclosed deposition testimony to support his claim that unambiguously accepted Defendant's offer. Id. (citing [ECF No. 79-1] at 16-17). As noted twice before, when reviewing evidence in a summary judgment proceeding, "the court need consider only the cited materials." FED. R. CIV. P. 56(c)(3). Notably, Plaintiff's initial response to Defendant's summary judgment motion only

mentions Servpro once at which point Plaintiff does not contest that he declined Defendant's offer. [ECF No. 66] at 7.

Nevertheless, Plaintiff's testimony is not as unambiguous as he asserts. Plaintiff's newly cited testimony suggests that he would have been amenable to ServPro's assistance so long as Defendant also paid for Service Master "to take a look at it." [ECF No. 79-1] at 16-17. Plaintiff's testimony appears to counteroffer Defendant's proposal: ServPro can give an estimate, if you'll also hire my preferred vendor to do the work. A basic principle of contract law is that a counteroffer functions as a rejection of the initial offer. Hinds Cnty. Econ. Dev. Dist. v. W & G Props. LLC, 203 So. 3d 49, 51 (¶7) (Miss. Ct. App. 2016) (citing Restatement (2d) of Contracts § 59 (1981)). Plaintiff's uncited testimony from that same deposition is even less "unambiguous" to Plaintiff's point: Plaintiff "did not want ServPro doing [his] roof," and he told Defendant's representative that he planned to stick with his own preferred vendors. [ECF No. 79-1] at 23-24.

Even had the Court erred, this alleged issue is irrelevant to the determination of bad faith punitive damages, and it does not warrant reconsideration of the Court's Order in this case. Sedgwick James, 276 F.3d at 759.

7. Statement Seven

"Defendant issued Plaintiff a retroactive insurance policy effective the date of the storm, contacted Plaintiff repeatedly to follow up on his initial claim, and paid out the claim immediately following its initial inspection." [ECF No. 80] at 12 (citing [ECF No. 76] at 11). This statement, the seventh and final with which Plaintiff takes issue, is the only one of the seven statements that is located in the Court's analysis of Defendant's summary judgment motion. [ECF No. 76] at 11.

Plaintiff asserts that there is a fact issue regarding this statement, which notes that Defendant contacted Plaintiff multiple times during the claim process. [ECF No. 80] at 12-18. In support of his claim that Defendant did not contact Plaintiff on multiple occasions, Plaintiff principally relies on previously undisclosed deposition testimony. Id. (citing [ECF No. 79-1] at 39-40, 83, 98, 135-41). As noted thrice before, when reviewing evidence in a summary judgment proceeding, "the court need consider only the cited materials." FED. R. CIV. P. 56(c)(3).

Plaintiff also relied on evidence suggesting that he contacted Defendant on multiple occasions to inquire about the status of his claim and complain about the initial claim adjuster's progress and communication on the claim. [ECF No. 80] at 12-13 (citing [ECF No. 65-6] at 25, 28-29; [ECF No. 83-2]).

14

That evidence cannot be interpreted to demonstrate that Defendant did not contact Plaintiff on multiple occasions. Defendant's cases file, the main source of Plaintiff's citations here found within the summary judgment record, notes multiple instances where Defendant contacted Plaintiff. See generally, [ECF No. 65-6]. Defendant cannot here point to evidence of a genuine fact issue such to demonstrate that the Court reached an erroneous ruling.

B. Directed Verdict Test

Plaintiff next asserts that the Court erroneously applied the directed verdict test to Plaintiff's claim for insurance bad faith punitive damages. [ECF No. 80] at 18-20. In this segment of the Motion, Plaintiff reargues his legal arguments from his response to Defendant's summary judgment motion. A motion for reconsideration is not the "proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before...." HydroChem Inc., 367 F.3d at 478 (quotations omitted).

In its earlier Order, the Court noted that "Mississippi courts apply the directed verdict test to determine whether an insurer had an arguable reason for its decision, and thus, to determine whether bad faith and extracontractual damages claims are meritorious." [ECF No. 76] at 9. This Court has relied on

15

the direct verdict test as recently as last year. Reed v. State Farm Fire and Cas. Co., 2022 WL 4474177 (S.D. Miss September 26, 2022). Plaintiff points to no intervening caselaw that persuades the Court to abandon the directed verdict test in this case.

### C. De Novo Assessment of Defendant's Motion for Partial Summary Judgment

Even upon fresh scrutiny in light of Plaintiff's protestations, the Court recognizes that it reached the right result in granting Defendant's partial summary judgment motion.

The Court reached this decision via use of the directed verdict test. "Under this test, unless the insured would be entitled to a directed verdict on the underlying insurance claim, an arguable reason to deny the insurance claim exists in most instances." Dunn v. State Farm Fire & Cas. Co., 927 F.2d 869 (5th Cir. 1991); see also, Tipton v. Nationwide Mut. Fire Ins. Co., 381 F.supp.2d 572, 579 (S.D. Miss. 2004). A plaintiff must carry this burden to advance past the summary judgment stage as to a claim for bad faith denial of an insurance claim. U.S. Fid. & Guar. Co. v. Wigginton, 964 F.2d 487, 492 (5th Cir. 1992). A directed verdict is permissible only when "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. Rule 50.

Could a reasonable jury rule for Defendant on the issue of bad faith punitive damages? In departing from the normal course of summary judgment in order to provide a directed verdict test analysis, the Court once again concludes that the evidence is such that a reasonable jury could find for the Defendant on the issue of bad faith punitive damages.

A reasonable jury could decide so based on a review of the test for a bad faith claim. Under Mississippi law, a plaintiff seeking punitive damages on a bad faith insurance claim must carry the "heavy burden" of first demonstrating that the insurance company's position lacked any arguable or legitimate basis. <u>Mitchell v. State Farm Fire & Casualty Co.</u>, 954 F.3d 700, 707-08 (5th Cir. 2020)(internal citations omitted). The Court need not reach the second prong, a standard punitive damages instruction, because the evidentiary record provides at least an arguable basis, when viewed under the guise of a Rule 50 inquiry, for a reasonable jury to find for the Defendant on this issue. <u>Id.</u>

Defendant reached its decision to issue Plaintiff a $9,291.26 check on Plaintiff's claim after an adjuster inspected Plaintiff's mobile home in-person, authored a detailed assessment, and discussed the inspection and its findings with the Plaintiff. [ECF No. 62-2] at 8. The Court notes that this

17

candid assessment, even if Plaintiff contests its accuracy, does not rise to the level of arbitrariness to the point where it is not arguable or is illegitimate. <u>Mitchell</u>, 954 F.3d at 707-08. Therefore, still under the guise of the directed verdict test, the evidence and argument in this record are not such that the Court could award Plaintiff a Rule 50 judgment as a matter of law on the issue of bad faith punitive damages.[1] Fed. R. Civ. P. Rule 50. As such, Plaintiff's claim for these extracontractual damages cannot move past the summary judgment stage. <u>Wigginton</u>, 964 F.2d at 492. Had the Court not once more relied on the directed verdict test, it would have reached the same conclusion because Plaintiff failed to rebut with evidence that creates a genuine issue of material fact that Defendant acted without an arguable or legitimate basis. <u>Essinger v. Liberty Mut. Fire Ins. Co.</u>, 534 F.3d 450, 451 (5th Cir. 2008).

IV. Conclusion

The Court has thoroughly considered and addressed each of Plaintiff's arguments and has arrived at the same conclusion to grant Defendant's partial summary judgment motion. As discussed throughout this Order and its predecessor, this is an ordinary insurance coverage dispute. The amount of compensatory damages,

---

[1] In the federal system, a Rule 50 motion serves as the mid-trial motion for directed verdict found in the Mississippi court system.

if liability exists on the part of Defendant, remains a question for a fact-finding jury. However, Plaintiff's claims for extracontractual bad faith punitive damages may not move forward based on the previous Order and the Court's independent analysis in this Order.

For the foregoing reasons, Plaintiff's Motion [ECF No. 79] shall be DENIED.

ACCORDINGLY,

IT IS HEREBY ORDERED that Plaintiff's Motion for Reconsideration [ECF No. 79] is DENIED.

SO ORDERED, this the 1st day of August, 2023.

/s/ David Bramlette
DAVID C. BRAMLETTE
UNITED STATES DISTRICT JUDGE